IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES OWENS, #K83253, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 17-cv-00667-SMY |
| | ) |
| DR. JOHN COE, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is before the Court on the Motion for Summary Judgment filed by Defendant Dr. John Coe (Docs. 178). Plaintiff James Owens responded in opposition to the motion (Doc. 181), and Dr. Coe filed a Reply (Doc. 183). For the following reasons, the motion is **GRANTED**.

## PROCEDURAL BACKGROUND

Plaintiff James Owens filed this *pro se* action pursuant to 42 U.S.C. § 1983 on June 27, 2017, alleging deprivations of his constitutional rights at Lawrence Correctional Center between October 2015 and February 2016 relating to Defendant's alleged failure to treat his left hip and leg pain and failure to ensure he received meals between October 30, 2015 and November 10, 2015 (Doc. 1).[1] Following preliminary review of the Complaint under 28 U.S.C. § 1915A, the Court dismissed Plaintiff's claim that Defendant denied Plaintiff the means to get nutrition (Doc. 5). Later, the Court granted Defendant's Motion for Summary Judgment on the issue of exhaustion of administrative remedies as it related to his medical care of Plaintiff's left hip and leg pain (Doc. 41).

Plaintiff appealed, among several things, the dismissal of his claims against Defendant Dr.

---

[1] During his deposition, Plaintiff indicated that the timeframe was actually October 30, 2015 to November 23, 2015 (Doc. 179-1, p. 24).

John Coe (Doc. 117). The Seventh Circuit Court of Appeals vacated both this Court's dismissal of Plaintiff's claim that Defendant denied him adequate nutrition and the grant of summary judgment for lack of exhaustion as it related to Plaintiff's claim that Defendant did not adequately treat his left hip and leg pain, and remanded the claims for further proceedings (Doc. 142-2).

The case is now before the Court for consideration of Defendant's Motion for Summary Judgment on Plaintiff's claims that his rights under the Eighth Amendment were violated because Defendant was deliberately indifferent to his serious medical needs and ability to receive meals.

## FACTS

The following facts relevant to the motion for summary judgment are undisputed unless otherwise noted: At all times relevant to the allegations in Plaintiff's Complaint, Plaintiff was an inmate housed at Lawrence Correctional Center (Doc. 179-1, pp. 10-11). Defendant Dr. John Coe was the Medical Director at Lawrence from approximately April 2013 to July 216 (Doc. 179-2, p. 1). As the Medical Director, Dr. Coe examined patients and issued treatment orders after the on-site nurses triaged patients and scheduled the appointments (Doc. 179-2, pp. 1-2).

Plaintiff woke up with pain in his left hip on October 24, 2015 (Doc. 179-2, p. 5). Plaintiff testified that he submitted a health service request for pain medication on that date. At the time, he already had a prescription for Naproxen. *Id.* He futher testified that on October 26, 2015, he submitted another health service request because of his pain. *Id.* According to Defendant's Affidavit, although Plaintiff addressed health service requests to Defendant, a medical clerk, not Defendant, reviewed them (Doc. 179-2, p. 2). According to Plaintiff, he submitted another health service request on October 27, 2015 (Doc. 181, p. 3, 17). Defendant attests that he never received or reviewed any health service requests, and never reviewed anything that said Plaintiff could not walk to the chow hall *Id.*

On October 30, 2015, Plaintiff's hip became so sore that he sought immediate emergency medical treatment (Doc. 179-1, pp. 17-20). Plaintiff was seen by a nurse for pain in his left leg that he complained started in his left groin and traveled to his hip and then down to his knee (Doc. 179-2, p. 5). Plaintiff complained that the origin of the pain was unknown but that he had severe pain and limited motion (Doc. 179-2, p. 5; Doc. 179-1, pp. 18-20). He had a cane at that time (Doc. 179-1, p. 19; Doc. 179-2, p. 5). Defendant did not see Plaintiff on that date (Doc. 179-1, p. 20). However, Defendant did order a Toradol shot to be given in Plaintiff's left hip (Doc. 179-2, p. 3; Doc. 179-1, p. 20). Plaintiff testified that he submitted additional health service requests addressed to Defendant on November 1, 2015 and November 2, 2015, indicating he was still having pain and could not walk to the dining room (Doc. 179-1, pp. 32-33).

Plaintiff saw a nurse on November 4, 2015 for pain in his left knee and hip (Doc. 179-2, p. 3; Doc. 179-2, p. 6; Doc. 179-1, pp. 21-22). The nurse referred him for an appointment with Defendant (Doc. 179-2, p. 6).

Defendant saw Plaintiff for the first time on November 5, 2015 and gave him a cortisone injection (Doc. 179-2, p. 3). Defendant saw Plaintiff again on November 9, 2015 for follow-up (Doc. 179-2, p. 3; Doc. 179-1, p. 23). During that visit Defendant noted Plaintiff had tenderness over the leg in the area where the cortisone shot had been given, but there was no heat. *Id.* Defendant diagnosed Plaintiff with bursitis and ordered a follow-up in two weeks. *Id.*

Plaintiff testified that he submitted health service requests addressed to Defendant on November 9, 2015, November 10, 2015, November 13, 2015, and November 21, 2015 (Doc. 179-1, pp. 32-33), indicating he was continuing to have pain, requesting additional pain medication or muscle relaxers, and indicating that his pain caused him to be nauseous and unable to eat after walking to the chow hall. *Id.*

Defendant saw Plaintiff on November 23, 2015 for follow-up (Doc. 179-2, p. 8; Doc. 179-1, pp. 23-24). Plaintiff complained of continued pain and that he couldn't eat when he walked to chow because of the pain. *Id.* Plaintiff indicated that he needed a wheelchair, and Defendant ordered him one. *Id.* Defendant noted that the area where the cortisone injection was given was not sore (Doc. 179-2, p. 3; Doc. 179-2, p. 8). Defendant diagnosed Plaintiff with chronic sciatica. *Id.*

Plaintiff claims that a health service request he submitted on December 4, 2015 was addressed to Defendant. In the request, he indicated that he was still having extreme pain and swelling (Doc. 181, p. 6; Doc. 183, p. 6). He requested alternative pain medication and status on the wheelchair ordered by Defendant. *Id.*

Plaintiff was seen by a nurse on December 8, 2015 (Doc. 179-2, p. 9; Doc. 179-1, pp. 25-27). He complained of pain in his left knee that had been ongoing for 6 weeks (Doc. 179-2, p. 9). Plaintiff's pain medication prescription for Naproxen was still valid at that time. *Id.*

Plaintiff testified that on January 5, 2016, he submitted a health service request addressed to Defendant indicating that he wouldn't be given his wheelchair unless he gave up his cane (Doc. 179-1, p. 30-31).

On January 13, 2016, Plaintiff was seen by a nurse for complaints of hip and back pain (Doc. 179-2, p. 10; Doc. 179-1, p. 27). The medical records indicate that Plaintiff reported the pain was intermittent and had been treated before as arthritis. *Id.* The nurse ordered a chart review because Plaintiff's Naproxen prescription was set to expire on January 18, 2016. *Id.*; Doc. 179-1, p. 27.

On February 7, 2016, Plaintiff saw a nurse and requested pain medication because his Naproxen prescription had expired (Doc. 179-2, p. 11). He was told that the doctor would review

his chart the next day. *Id*.

Plaintiff saw Defendant again on February 12, 2016 (Doc. 179-2, pp. 4, 12). He reported having continued trouble walking. *Id.*; Doc. 179-1, pp. 29-30. At that time Plaintiff was walking with his cane. *Id.* Defendant examined Plaintiff and diagnosed arthritis in his hips (as seen on x-ray). Defendant ordered a standard wheelchair, another Naproxen prescription, and a new cane tip. *Id.* Plaintiff received the wheelchair on February 22, 2016 and the new cane tip on February 18, 2016 (Doc. 179-1, pp. 29-30).

Plaintiff testified that while he was experiencing pain and medical issues from October 30, 2015 to November 23, 2015 he was in so much pain when he would walk to the chow hall that he would be nauseous and couldn't eat his food (Doc. 179-1, p. 24). During that time, he was receiving breakfast because breakfast served in the cells (Doc. 179-1, p. 35). He made complaints to CO's and wing officers that he wasn't able to go to chow or able to eat during that time (Doc. 179-1, pp. 34-36). It wasn't until after November 23, 2015 that Plaintiff could make it to the chow hall and was able to eat, even though he was still having pain and was still sick to his stomach (Doc. 179-1, pp. 31-32).

## DISCUSSION

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the non-moving party must identify specific facts in the record showing that genuine issues of material fact exist precluding summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, the court "…must view all the

evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Hansen v. Finantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014).

## Deliberate Indifference to Medical Needs

The Eighth Amendment prohibits deliberate indifference to the serious medical needs of prisoners. *Machicote v. Roethlisberger*, 969 F.3d 822, 827 (7th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). An inmate proceeding on such a claim must offer evidence that he suffered from an objectively serious medical condition, and that the defendant knew of and disregarded a substantial risk of harm. *Murphy v. Wexford Health Sources Inc.*, 962 F.3d 911, 915 (7th Cir. 2020).

A medical condition is objectively serious if it "has been diagnosed by a physician as mandating treatment" or is "so obvious that even a lay person would perceive the need for a doctor's attention." *Perry v. Sims*, 990 F.3d 505, 511 (7th Cir. 2021) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Although this typically refers to an "acute" problem (e.g. a fracture or a wound), chronic or degenerative conditions that may escalate if not treated properly can also be objectively serious. *Gray v. Hardy*, 826 F.3d 1000, 1006 (7th Cir. 2016). Prison officials are not excused from treating chronic or degenerative conditions simply because the risks of not treating those injuries "remain latent or have not yet reached the point of causing acute or life-threatening injuries." *McDonald v. Hardy*, 821 F.3d 882, 889 (7th Cir. 2016).

Here, Defendant does not dispute whether Plaintiff suffered from an objectively serious medical condition; there is evidence in the record that Plaintiff's condition was persistently painful and required frequent treatment, including injections, medication, and mobility aids. He argues,

however, that he did not disregard Plaintiff's condition or the risk of harm to him as a result of that condition.

Deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment is more than negligence and approaches intentional wrongdoing. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Plaintiff must establish deliberate indifference to his condition by demonstrating that the treatment he received was blatantly inappropriate. *Greeno*, 414 F.3d at 654. In other words, medical professionals are entitled to deference in treatment decisions unless "no minimally competent professional would have so responded under those circumstances." *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008). With respect to ongoing treatment, a court should examine the totality of care the prisoner received to determine whether he received adequate medical care. *Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000). Disagreement between an inmate and his doctor about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006).

Plaintiff began receiving medical treatment for left hip and leg pain on October 30, 2015, when he was seen by a nurse and given a Toradol shot, as ordered by Defendant. He saw the nurse again on November 4, 2015. At that time, the nurse referred Plaintiff to Defendant and scheduled the referral appointment for November 9, 2015.

Defendant first saw Plaintiff on November 9, 2015. He diagnosed Plaintiff with bursitis and ordered a follow-up visit to evaluate whether the injections and continued oral prescription pain medication alleviated Plaintiff's pain. When Defendant next saw Plaintiff on November 23, 2015, Plaintiff continued to complain of pain. Defendant diagnosed him with chronic sciatica and ordered him a wheelchair as an alternative mobility aid to the cane Plaintiff was using. The only

other time that Defendant saw Plaintiff was on February 12, 2016. At that time, Defendant noted arthritis in Plaintiff's hip and renewed Plaintiff's expired pain medication prescription, again ordered a wheelchair, and ordered him a new cane tip.

While Plaintiff testified that he addressed several health services requests directly to Defendant beginning on October 26, 2015, Defendant attests by affidavit that the requests were reviewed by a medical clerk, not him; he never received or reviewed them. Although this presents a factual dispute, it's not material. The evidence demonstrates that Defendant consistently evaluated Plaintiff's complaints, maintained his prescription pain medication, treated him with both steroidal and non-steroidal injections, provided physical therapy, and ordered various mobility aids to assist Plaintiff with ambulating.

Plaintiff argues that Defendant could have, or should have, provided him with different treatment or different medications, but the Eighth Amendment does not require physicians to provide specific treatment or treatment of Plaintiff's choice. *Forbes v. Edgar*, 112 F.3d 262, 266-267 (7th Cir. 1997). And Plaintiff has presented no evidence from which a jury could reasonably conclude that the treatment provided by Defendant was blatantly inappropriate and caused any significant aggravation of his condition. As such, Defendant is entitled to summary judgment on this claim.

### Deliberate Indifference to Adequate Nutrition

"Prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To establish a violation of the Eighth Amendment as it relates to those necessities, an inmate must objectively show that he was deprived of something "sufficiently serious." *Id.* at 834. A sufficiently serious deprivation is one in which the prison official's acts or omissions result in the denial of minimal civilized measures

of life's necessities. *Id.* Additionally, the inmate must make prove that the deprivation occurred with deliberate indifference to the inmate's health or safety. *Id.* The extent, duration, and consequences of the deprivation of food and nutrition are relevant in assessing whether it violates the Eighth Amendment. *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999); *see Simmons v. Cook*, 154 F.3d 805, 809 (8th Cir. 1998) (denying prisoners four consecutive meals over two days violated the objective component of the *Farmer* test); *see Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir. 1998) (noting that denial of one out of every nine meals is not a constitutional violation); *see Cooper v. Sheriff of Lubbock County*, 929 F.2d 1078 (5th Cir. 1991) (failure to feed prisoner for twelve days was unconstitutional); *see Dearman v. Woodson*, 429 F.2d 1288, 1289 (10th Cir. 1970) (prisoner who was deprived of food for 50+ hours had a viable claim).

In his Complaint, Plaintiff alleges that he missed 11 meals and only received one meal per day between October 31, 2015 and November 10, 2015, because he was in too much pain to walk to chow hall. During his deposition, he testified that the time period in question was actually between October 31, 2015 and November 23, 2015. This evidence is sufficient to support a finding of an unconstitutional deprivation under *Farmer's* objective standard. That said, Plaintiff's claim fails as a matter of law.

Plaintiff has failed to produce any evidence that Defendant was aware that he was not receiving adequate food until November 23, 2015 due to his pain and an inability to walk to chow hall. On that date, Defendant specifically ordered Plaintiff a wheelchair to get to the chow hall with less pain. The majority of Plaintiff's complaints regarding his food and nutrition were made to CO's and wing officers (Doc. 179-1, p. 36). But Defendant cannot be held liable unless he had personal involvement in the alleged constitutional deprivation. *Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019) *citing Consolino v. Towne*, 872 F.3d 825, 832 (7th Cir. 2017). Based on the

evidence in the record, a reasonable jury could not conclude that Defendant was deliberately indifferent to Plaintiff's adequate food and nutrition needs.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 183) is **GRANTED**. Defendant Dr. John Coe and the claims against him are **DISMISSED with prejudice**. Plaintiff's Motion for Status (Doc. 191) is **TERMINATED AS MOOT**. The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: March 24, 2025**

**STACI M. YANDLE**
**United States District Judge**